UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | : : : | | |
| Plaintiff, | : : | Civil Action No.: | 11-00187 (RMU) |
| v. | : : | Re Document No.: | 6 |
| GIGFX, LLC, | : : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING THE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

**I.  INTRODUCTION**

This matter comes before the court on the plaintiff's motion for default judgment, pursuant to Federal Rule of Civil Procedure 55(b)(2). The plaintiff, the Commodity Futures Trading Commission ("CFTC"), alleges that the defendant, GIGFX, LLC ("GIGFX"), has violated the Commodity Exchange Act ("CEA"), codified at 7 U.S.C. §§ 1 *et seq.*, and the corresponding CFTC Regulations. More specifically, the CFTC claims that GIGFX unlawfully failed to register with the CFTC before soliciting or accepting orders from certain customers during retail foreign exchange transactions. The defendant, though properly served with the complaint, has not filed an answer. The plaintiff now seeks an entry of default judgment and requests injunctive relief and a civil monetary penalty. Because the defendant has been unresponsive and has thereby halted the adversary process, the court grants the plaintiff's motion and awards it the injunctive relief and civil monetary penalty requested.

## II.  BACKGROUND

### A.  Statutory Framework

In October 2010, after the passage of the CFTC Reauthorization Act of 2008 ("CRA") and the Dodd-Frank Act, the CFTC enacted new regulations ("CFTC Regulations") to govern, *inter alia*, retail foreign exchange or "forex" transactions.  7 U.S.C. § 1(a); 17 C.F.R. §§ 5 *et seq*.  In a typical forex transaction, a party exchanges a particular quantity of one country's currency for a specified quantity of another country's currency.  17 C.F.R. § 5.1(m).  This transaction occurs between a retail customer and an eligible counterparty.  *See* 7 U.S.C. § 2(c)(2)(B)(i)(II).  Retail customers[1] are individuals who possess a particular amount of assets and who are not registered as futures or securities professionals.  *Id.* § 1a(12)(A)(xi).  By contrast, an eligible counterparty is either a regulated financial institution such as an investment firm, credit institution or central bank, or a retail foreign exchange dealer ("RFED").  17 C.F.R. § 5.1(h)(1).  An RFED is an otherwise unregulated entity that must meet certain criteria, including retaining membership in the National Futures Association and filing specific forms.  *Id.* § 5.12.

Under the CRA and the Dodd-Frank Act, the CFTC can write and enforce rules and regulations to implement CEA provisions that govern forex transactions.  7 U.S.C. § 6; 12 U.S.C. § 5517(j)(1).  One such regulation requires RFEDs to register with the CFTC before serving as a counterparty in forex transactions.  17 C.F.R. § 5.3(a)(6)(i).

### B.  Factual and Procedural Background

According to the CFTC, GIGFX solicits United States customers through its website to open forex trading accounts.  Compl. ¶ 4; Pl.'s Mot. for Def. J. ("Pl.'s Mot.") at 9.  The CFTC

---

[1]  Under the CEA, retail customers are also known as "non-Eligible Contract Participants."  7 U.S.C. § 1a(12)(A).

alleges in this action that GIGFX solicited orders from retail customers during forex transactions without first registering as an RFED, in violation of the newly-enacted CFTC Regulations and the CEA.  Compl. ¶ 2.

The plaintiff served the defendant with the summons and complaint on January 28, 2011.  Return of Service/Affidavit, Aff. of Adam Golden ("Golden Aff.").  After the defendant failed to respond to the complaint, on February 24, 2011, the plaintiff requested an entry of default against the defendant.  Aff. in Supp. of Default at 1.  On February 25, 2011, the Clerk of the Court entered default against the defendant.  *See generally* Entry of Default.  Shortly thereafter, the plaintiff filed this motion for default judgment under Rule 55(b),[2] seeking both injunctive and monetary relief.  Pl.'s Mot. at 1.  The court now turns to the plaintiff's request for relief and the applicable legal standard.

### III. ANALYSIS

#### A.  Legal Standard for Entry of Default Judgment Under Rule 55(b)(2)

A court has the power to enter default judgment when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics.  *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980).  Rule 55(a) of the Federal Rules of Civil Procedure provides for entry of default "[w]hen a party against whom a judgment for affirmative relief is

---

[2] Rule 55 specifies a two-step process for a party seeking to obtain a default judgment.  First, the plaintiff must request that the Clerk of the Court enter a default against the party who has "failed to plead or otherwise defend" against an action.  FED. R. CIV. P. 55(a).  Second, if the plaintiff's claim is not for a certain amount, the party must apply to the court for an entry of default judgment.  *Id.* 55(b)(2).  This two-step process allows a defendant the opportunity to move to set aside a default previously entered by the clerk before the court enters judgment.  *Id.* 55(c); *see also H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) (stating that "[t]he notice requirement contained in Rule 55(b)(2) is . . . a device intended to protect those parties who, although delaying in the formal sense by failing to file pleadings . . . have otherwise indicated to the moving party a clear purpose to defend the suit").

sought has failed to plead or otherwise defend as provided by these rules." FED. R. CIV. P. 55(a). Upon request of the party entitled to default, Rule 55(b)(2) authorizes the court to enter against the defendant a default judgment for the amount claimed and costs. *Id.* 55(b)(2).

Because courts strongly favor resolution of disputes on their merits, and because "it seems inherently unfair" to use the court's power to enter judgment as a penalty for filing delays, modern courts do not favor default judgments. *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980). Accordingly, default judgment is available "only when the adversary process has been halted because of an essentially unresponsive party . . . [as] the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *Id*. at 836 (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)).

Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint. *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001); *Avianca, Inc. v. Corriea*, 1992 WL 102999, at *1 (D.D.C. Apr. 13, 1992); *see also Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 65 (2d Cir. 1986) (noting that "default concludes the liability phase of the trial"). Default does not, however, establish liability for the amount of damage that the plaintiff claims. *Shepherd v. Am. Broad. Cos., Inc.*, 862 F. Supp. 486, 491 (D.D.C. 1994), *vacated on other grounds*, 62 F.3d 1469 (D.C. Cir. 1995). Instead, "unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Adkins*, 180 F. Supp. 2d at 17; *see also Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (stating that the court must conduct an inquiry to ascertain the amount of damages with reasonable certainty). The court has considerable latitude in determining the amount of damages. *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 4 (1st Cir.

1993).  In order to fix the amount, the court may conduct a hearing.  FED. R. CIV. P. 55(b)(2).  The court is not required to do so, however, "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment."  *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

### B.  The Court Grants the Plaintiff's Motion for Default Judgment

#### 1.  The Defendant Is Liable for Two Violations

The plaintiff asserts that it is entitled to default judgment because the defendant has failed to answer the complaint or otherwise defend itself in this action.  Pl.'s Mot. at 1.  Specifically, the plaintiff claims that the court should find the defendant liable for violating the CEA and the corresponding CFTC Regulations.  *Id.*  According to the plaintiff, the defendant committed two distinct violations, one for failing to register with the CFTC as an RFED, and one for soliciting and accepting orders from retail customers without having first registered.  *Id.*

Default judgment is appropriate when, as previously mentioned, "the adversary process has been halted because of an essentially unresponsive party."  *H.F. Livermore Corp.*, 432 F.2d at 691.  In this case, the plaintiff served the defendant with the summons and complaint on January 28, 2011.  Golden Aff.  Since that date, the defendant has failed to plead or otherwise defend itself in this action.  Moreover, the defendant has responded neither to the plaintiff's request for default nor to its motion for default judgment.  Given the defendant's unresponsiveness, the court concludes that the entry of default judgment is appropriate.  *See Fanning v. Permanent Solution Indus., Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009) (concluding that the defendant was liable to the plaintiff because the defendant had failed to respond to the complaint or otherwise defend itself); *Adkins*, 180 F. Supp. 2d at 17 (explaining that the court could enter a

default judgment because the defendant did not file or serve any objection or responsive pleading within twenty-one days of being served with the complaint).

As a result of the entry of default, the court construes all well-pleaded allegations in the complaint as admitted. *See, e.g., Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (accepting as admitted the defendant's failure to make pension fund contributions as required by ERISA (internal citations omitted)). As previously noted, the plaintiff alleges that the defendant committed two violations, one of the CEA, and one of the corresponding CFTC Regulations. Pl.'s Mot. at 1.

Under the CEA, a retail foreign exchange dealer can be liable for each violation of the statute or of any "rule, regulation or order thereunder." 7 U.S.C. § 13a-1(a). The CFTC Regulations require an entity to register with the CFTC as an RFED. 17 C.F.R. § 5.3(a)(6)(i). ("Any retail foreign exchange dealer, as defined in § 5.1(h)(1) of this part is required to register as a retail foreign exchange dealer . . . ."). Failure to do so constitutes a violation of the CFTC Regulations. 7 U.S.C. § 13a-1(a). In addition, an unregistered RFED may not "solicit or accept orders" from retail customers. 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa). Engaging in forex transactions by soliciting or accepting orders without properly registering with the CFTC is a violation of the statute. *Id.* Accordingly, because the plaintiff has sufficiently pleaded that the defendant solicited and accepted orders without registering as an RFED, the court accepts these well-pleaded allegations as establishing the defendant's liability for two violations. *See Fanning*, 257 F.R.D. at 7 (concluding that the plaintiffs sufficiently alleged facts to support their claims, entitling them to default judgment as to the defendant's liability); *see also Commodity Futures Trading Comm'n v. Prime Forex, LLC*, Civ. No. 11-189 (D.D.C. 2011) (determining that the defendant's failure to register as an RFED and soliciting or accepting orders as an unregistered

RFED constituted distinct violations of the statute); *Commodity Futures Trading Comm'n v. Kingdom Forex Trading & Futures*, Civ. No. 11-190 (D.D.C. 2011).

### 2. The Plaintiff Is Entitled to Injunctive Relief

The plaintiff seeks a permanent injunction prohibiting the defendant from engaging in any further commodity-related activity that violates CFTC Regulations or the CEA. Pl.'s Mot. at 13, 15. According to the plaintiff, the injunction will (1) prohibit GIGFX and all entities who act in concert with GIGFX from engaging in any further conduct that violates the CEA and CFTC Regulations (including operating the GIGFX website); (2) prohibit GIGFX from entering into forex transactions; and (3) permanently prohibit GIGFX from registering as an RFED, seeking exemption from registration with the CFTC in any capacity or engaging in any activity requiring registration or exemption from registration. *Id.*

The CEA allows the CFTC to seek permanent injunctive relief under the following circumstances:

> Whenever it shall appear to the Commission that any registered entity or other person has engaged in, is engaging in, or is about to engage in any act or practice constituting a violation of any provision of this CEA or any rule, regulation or order thereunder . . . the Commission may bring an action in the proper district court of the United States . . . to enjoin such action or practice, or to enforce compliance with this CEA, or any rule, regulation or order thereunder . . . .

7 U.S.C. § 13a-1(a). As indicated earlier, the defendant is required, pursuant to both 7 U.S.C. § 2(c)(2)(C)(iii)(I)(aa) and 17 C.F.R. § 5.3(a)(6)(i), to register as an RFED with the CFTC prior to soliciting or accepting orders from retail customers in forex transactions. Because the defendant has failed to register with the CFTC, and because it has declined to participate in this litigation, the court grants the plaintiff's request for injunctive relief. *See Commodity Futures Trading Comm'n v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1346-47 (11th Cir. 2008) (holding that it

was appropriate for the district court to enjoin the defendants from engaging in "commodity-related activity" based on the defendants' past conduct and potential for future violations of the CEA and CFTC Regulations).

### 3.  The Court Awards a Civil Monetary Penalty

The plaintiff also seeks a civil monetary penalty against the defendant for its two violations of the CEA.  Pl.'s Mot. at 17.  Pursuant to 7 U.S.C. § 6c(d)(1), the plaintiff asserts that the court should impose a penalty of $140,000 for each violation, or a total of $280,000 plus post-judgment interest.  *Id.* at 16-17.

When moving for default judgment, a plaintiff must prove that it is entitled to the requested damages.  *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30 (citing *Oberstar v. Fed. Deposit Ins. Comm'n*, 987 F.2d 494, 505 n.9 (8th Cir. 1993)).  Unless the amount of damages is certain, the court must make an independent determination of the sum to be awarded.  *Adkins*, 180 F. Supp. 2d at 17.  Under the CEA, the CFTC can seek to impose a civil monetary penalty of $140,000 for each violation of the statute or of the corresponding CFTC Regulations.  7 U.S.C. § 13a-1(a); 17 C.F.R. § 143.8(a)(1)(iii) ("the inflation-adjusted maximum civil monetary penalty for each violation of the Commodity Exchange Act…[f]or violations committed on or after October 23, 2008, [is no] more than the greater of $140,000 or triple the monetary gain to such person for each such violation").  Accordingly, this court imposes a $280,000 civil monetary penalty plus post-judgment interest for the defendant's two violations.  *Commodity Futures Trading Comm'n v. Levy*, 541 F.3d 1102, 1110-11 (11th Cir. 2008) (upholding the district court's imposition of a separate civil monetary penalty for each violation of the statute); *Prime Forex, LLC*, Civ. No. 11-189 at 9, 12 (imposing separate penalties plus post-judgment interest

for the defendant's failure to register as an RFED and for soliciting or accepting orders as an unregistered RFED); *Kingdom Forex Trading & Futures*, Civ. No. 11-190 at 9 (same).

## IV. CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion for default judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 22nd day of February, 2012.

RICARDO M. URBINA
United States District Judge